**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
DALMA EDWARDS,                      :
                                    :   Civil Action No. 10-3360 (JBS)
           Petitioner,              :
                                    :
      v.                            :          **O P I N I O N**
                                    :
FEDERAL BUREAU OF PRISONS,          :
et al.,                             :
                                    :
           Respondents.             :
_____:

**APPEARANCES**:

    DALMA EDWARDS, Petitioner Pro Se
    #54938-083
    FCI Fort Dix
    P.O. Box 2000
    Fort Dix, New Jersey  08640

    IRENE E. DOWDY, AUSA
    OFFICE OF THE U.S. ATTORNEY
    Camden Federal Bldg. & U.S. Courthouse
    401 Market Street, 4th Floor
    Camden, New Jersey  08101
    Attorney for Respondents

**SIMANDLE, District Judge**

Petitioner Dalma Edwards ("Edwards"), a federal prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey ("FCI Fort Dix"), has submitted a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] on or

---

[1] Section 2241 provides in relevant part:

about July 1, 2010, challenging a determination made by the Federal Bureau of Prisons (hereinafter the "BOP") for his placement in a residential re-entry center at the end of his prison term, allegedly in violation of the Second Chance Act. The named respondents are the BOP and Donna Zickefoose, Warden at FCI Fort Dix (hereinafter, the "Government").  On October 22, 2010, counsel for the Government filed a response to the petition, including the relevant administrative record of the case (Docket entry no. 7).  Edwards filed a reply or traverse on November 4, 2010 (Docket entry no. 9).

Because it appears from a review of the submissions and record that Edwards is not entitled to relief, the petition will be denied.

## BACKGROUND

**A.   The Second Chance Act**

Residential Re-Entry Center ("RRC") assignments are governed by 18 U.S.C. § 3624(c)(1), which was amended in 2007 by the Second Chance Act, Pub. L. No. 110-199, effective April 9, 2008.

---

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
>         * * *
> (c) The writ of habeas corpus shall not extend to a prisoner unless-... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ....

2

In essence, the Act extended the maximum amount of time that the Bureau of Prisons ("BOP") may place an inmate in an RRC from 180 days to twelve months.

Regularly referred to as the "Second Chance Act," the amended statute provides, in pertinent part:

> (1) In General.-The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.-The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.
> ...
> (4) No limitations.-Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.
> ...
> (6) Issuance of regulations.  The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is-
>
>> (A) conducted in a manner consistent with section 3621(b) of this title;
>>
>> (B) determined on an individual basis; and
>>
>> (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c). As noted in the statute, the BOP was ordered to issue regulations not later than 90 days after the date of the enactment of the Second Chance Act, to ensure that placement was conducted consistently with § 3621(b) of the statute, that the determination was individualized, and that the duration of placement was sufficient. Section 3621(b) states:

> (b) Place of imprisonment. The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence- (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to Section 994(a)(2) title 28 . . .
>
> . . . Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment.

On April 14, 2008, the BOP issued a "Memorandum for Chief Executive Officers", providing staff guidance for implementing

the Second Chance Act.  The memorandum indicated that the BOP's then-existing time frame on pre-release community confinement placement was no longer applicable and should not be followed, that certain adjustments were necessary to the Program Statement 7310.04, concerning review of inmates for pre-release RRC placement, and that each inmate's pre-release RRC decision must be analyzed and supported under the § 3621(b) factors, cited above.  Among other guidelines, the memorandum provided:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

BOP Memo, April 14, 2008, as cited in Strong v. Schultz, 559 F. Supp.2d 556, 562 (D.N.J. 2009).

Subsequently, the BOP issued the required regulations, effective October 21, 2008, setting forth procedures for evaluating inmates' placement decisions to RRCs or home detention.  See 28 C.F.R. §§ 570.20-570.22.  The regulations do not include the requirement in the April 14, 2008 memo for approval from the Regional Director for pre-release RRC placement beyond six-months.[2]

---

[2]  Title 28 of the Code of Federal Register, section 570.22 states: "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section

B.   **Petitioner's Claims and Application of the Act.**

    1.   Background of Petitioner's Case

Edwards was convicted in the United States District Court for the Eastern District of Virginia, on charges of theft of government property, in violation of 18 U.S.C. §§ 641, 642, and money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(B)(i) and 2.  On February 10, 2003, Edwards was sentenced to a term of 78 months in prison, with three years of supervised release.  On May 25, 2007, Edwards was released from prison, via good conduct

---

3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."

    The time frames noted are set forth in section 570.21, which states:

> (a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.
>
> (b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.
>
> (c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.
>
> 28 C.F.R. § 570.21

time credits, to supervised release.  However, on February 1, 2010, Edwards' supervised release was revoked, and he was sentenced to a prison term of 18 months.  The Government contends that Edwards' projected release date, assuming he receives all good conduct time available to him, is May 21, 2011.  (See Declaration of Tara Moran ("Moran Decl.") at Exhibits 1 and 2). Edwards claims that his projected release date is three days earlier, on May 19, 2011.  (Petitioner's Traverse at § K, pg. 6).

On May 21, 2010, one year before his projected release date, Edwards' Unit Team Case Manager, Frederick Olsen, met with Edwards to conduct a Program Review.  Before the Program Review, Olsen reviewed Edwards' Central File, which includes historical information such as the inmate's criminal history, financial information, education, work history, and performance.  At that May 21, 2010 meeting, Edwards' RRC placement was discussed.  (See Declaration of Frederick Olsen ("Olsen Decl.") at ¶¶ 3, 5).

Olsen relates that his program review of Edwards revealed that Edwards had violated supervised release, indicating "an individual's inability or unwillingness to follow implemented rules and standards."  (Olsen Decl., ¶ 6).  Olsen also noted that Edwards had owned and operated two businesses before his incarceration, and had worked as an aviation machinist in the United States Navy.  Olsen stated that while there was no promise of employment for Edwards at the time, Edwards' records did show

7

that he had a work history.  Olsen further stated that Edwards had indicated that he would live with his girlfriend upon release from prison.  (Id.).  Thus, based on the following recommendation, the Unit Team determined that 90 to 120 days in an RRC would be appropriate:

> Regarding release planning, inmate Edwards stated that he would live with his girlfriend upon release from custody.  As of now, inmate Edwards has no promise of employment, however Unit Team feels 90-120 RRC placement time would help facilitate a successful transition back into the community.  According to his Pre-Sentence Investigation report, inmate Edwards owned and operated two different businesses and was in the United States Navy as an aviator machinist in the past, therefore, he has work history.  During his incarceration period, he has worked in Food Service work detail, where he has gained skills.  Inmate Edwards has not participated in any courses during his incarceration period at this facility.  Based on his educational background, past employment, community and family resources, assets and employable skills, the Unit Team feels that the recommendation for RRC is substantiated.  In addition, the Unit Team discussed methods to secure employment ... i.e., employment center, etc.  Unit Team also encouraged inmate Edwards to begin reaching out to prospective employers prior to his release from custody.

(Olsen Decl., ¶ 7 and Attachment 1).

Olsen further stated that the recommendation of 90-120 days RRC placement was made after weighing all of the statutory criteria and with the 12 month maximum placement under the Second Chance Act in mind.  (Olsen Decl. at ¶ 9).

Edwards admittedly has not exhausted his administrative remedies before commencing this habeas action.[3]  He does contend,

---

[3] The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions

8

however, that he had attempted to do so, but was denied the appropriate administrative remedy forms, thus forcing him to file his grievance "outside the normal mode of communication." (Pet. Traverse at ¶ E, pg. 4).

Finally, in reply to the Government's answer and administrative record, Edwards alleges that he had never indicated that he would live with his girlfriend and submitted an affidavit from her to that effect. He also states that the Unit Manager was not present at the May 21, 2010 program review, although the record does not indicate that he was. Further, Edwards had requested a "strategic release plan", which allegedly has not been implemented in his case. Finally, in his initial petition, Edwards states that he has a tumor, which allegedly

---

operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. See 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. See 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. See 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. See id. Appeal to the General Counsel is the final administrative appeal. See id. If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

9

requires surgical intervention that would render him unable to work for a period of time while he recuperates.  Consequently, based on medical need, he argues that he requires more than 90-120 days RRC placement.  Edwards did not provide any medical confirmation of recommended surgery.

    2.   Exhaustion of Administrative Remedies

    As an initial matter, this Court notes that Edwards did not fully exhaust his administrative remedies before filing this habeas petition.  Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where

exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In Snisky v. Pugh, the petitioner did not deny his failure to exhaust; however, the Court excused exhaustion because the petitioner was scheduled to be released, and his claim was clearly without merit.  See 974 F. Supp. 817, 819 (M.D. Pa. 1997), rev'd on other grounds, 159 F.3d 1353 (3d Cir. 1998).  The court recognized that exhaustion could be excused where it would be futile.  See id.  In Snisky, the court found that the BOP "unequivocally" would deny the petitioner's relief, and he would return to the district court after the denial.  Thus, the court addressed the claims on the merits.

Likewise, in Ferrante v. Bureau of Prisons, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile.

11

See 990 F. Supp. 367, 370 (D.N.J. 1998)(citing Snisky, 974 F. Supp. at 819-20).  Further, the court held that the petitioner's claim was clearly without merit, so that the exhaustion issue need not be reached.  See id.  See also Fraley v. Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion was not required because it was futile, as Regional Director would "almost certainly" have denied request, and term of imprisonment was completed).

    Here, this Court finds that, although Edwards had an opportunity to exhaust his administrative remedies, he failed to do so.  Nevertheless, at the time that the Unit Team made a final recommendation for Edwards' RRC placement, any attempt to exhaust administrative remedies likely would have been futile because Edwards' release date was imminent.  Moreover, it appears that Edwards did attempt to exhaust his administrative remedies, albeit outside the prescribed channels in the administrative remedy process.  Consequently, even if Edwards was successful in pursuing his administrative remedies, he would have lost several months for his extended RRC placement.  Therefore, this Court concludes that Edwards did not have adequate time to fully pursue his administrative remedies before bringing this action.  Finally, because this Court finds that Edwards' claim is not meritorious, as set forth below, his failure to exhaust becomes moot.

2.   <u>Claims and Defenses Asserted in this Action</u>

Petitioner principally refers to <u>Strong v. Schultz</u>, 599 F. Supp. 556 (D.N.J. 2009) for his contention that the BOP disregarded the Second Chance Act in denying him a longer RRC placement. (<u>See</u> Petition at pg. 10). He argues that consideration of all of his circumstances and criteria for an extended placement, the recommended 90-120 day RRC placement is insufficient for him to secure employment and successfully re-enter the community. Edwards further contends that the BOP abused its discretion in denying him an extended RRC placement as provided by the Second Chance Act, citing the April 14, 2008 memo "cap" on RRC placement at six months.

The Government contends that the BOP fully complied with the requirements of the Second Chance Act, and made a wholly-individualized evaluation and determination in Edwards' case pursuant to the requisite factors to be considered under 18 U.S.C. § 3621(b).

**DISCUSSION**

In <u>Strong v. Schultz</u>, 599 F. Supp.2d 556 (D.N.J. 2009), the petitioner, Douglas Strong's RRC placement decision was made on October 2, 2008. Thus, the decision was made subsequent to the April 14, 2008 memo, but prior to the October 21, 2008 enactment of the regulations by the BOP. In <u>Strong</u>, the court held that the April 14, 2008 Memorandum issued by the BOP was inconsistent

with the Second Chance Act's amendments to § 3624(c), because it "impermissibly constrains staff's discretion to designate inmates to a CCC fora duration that will provide the greatest likelihood of successful reintegration into the community, contrary to § 3624(c)(6)(C)." Strong, 599 F. Supp.2d at 563. Thus, as to Mr. Strong, the court held:

> Accordingly, because the duration of Strong's [RRC] placement was determined pursuant to these impermissible limitations, the BOP abused its discretion in determining that Strong's placement would be for six months. This Court will therefore grant the writ to Strong, and remand the matter to the BOP with instructions to consider Strong for a longer placement in a [RRC], in accordance with the Second Chance Act, and without regard to the April 14, 2008, Memorandum.

Id. at 563.

In this case, however, Edwards' placement decision was made well after the effective date of the interim rule. Nevertheless, Edwards suggests that his placement decision was impermissibly constrained by the six-month presumption contained in the April 14, 2008, memorandum. Edwards provides no factual support for this contention, nor does this Court find any support in the record.

Courts since Strong have recognized the limited holding of Strong. In cases, such as here, where Edwards' RRC placement decision was made after the BOP issued the appropriate regulations and abandoned the directive in the Memorandum concerning the six-month presumptive placement, courts have consistently held that the Second Chance Act does not guarantee a

14

one-year RRC placement, but "only directs the Bureau of Prisons to consider placing an inmate in a RRC for *up to* the final twelve months of his or her sentence."  Lovett v. Hogsten, 2009 WL 5851205 (6th Cir. Dec. 29, 2009)(unpubl.); see also Travers v. Federal Bureau of Prisons, 2009 WL 4508585 (D.N.J. Nov. 30, 2009) (finding that ". . . nothing in the Second Chance Act entitles Petitioner to a halfway house placement longer than the 120-150 days already approved.  These pre-release placement decisions are committed, by statute, to the discretion of the Director of the Bureau of Prisons, whose exercise of discretion is to be guided by the enumerated considerations."); Creager v. Chapman, 2010 WL 1062610 (N.D. Tex. Mar. 22, 2010)(holding that although Petitioner disagrees with her RRC placement date after consideration of the § 3621(b) factors, this "does not establish a constitutional violation, as nothing in the Second Chance Act or § 3621(b) entitles [Petitioner] or any other prisoner to any guaranteed placement in a residential reentry center[]" and "'the duration of [RRC] placement is a matter to which the [BOP] retains discretionary authority.'" (citations and quotation omitted)); Chaides v. Rios, 2010 WL 935610 (E.D. Cal. Mar. 15, 2010)("In sum, the BOP has discretionary authority to transfer an inmate to an RRC at any time, after considering the factors set forth in 18 U.S.C. § 3621(b), and has a separate and distinct obligation to consider an inmate for transfer to an RRC for up to

twelve months prior to the inmate's release date, after considering the factors set forth in section 3621(b)." (citation omitted)).

In distinguishing <u>Strong</u>, the Middle District of Pennsylvania examined a claim by a petitioner who received a 60-day RRC placement recommendation.  See <u>Wires v. Bledsoe</u>, 2010 WL 427769 (M.D. Pa. Feb. 3, 2010).  In the <u>Wires</u> case, the court found that:

> . . . since the petitioner's unit team recommended significantly less than six months (only 60 days) in a RRC, there is no basis to infer that their discretion was in any way constrained or chilled by the requirement stated in the memoranda that RRC placement beyond six months must be based on unusual or extraordinary circumstances and must be approved by the Regional Director.
>
> The petitioner was considered for placement in a RRC.  Thus, he was not denied due process.  Further, there is no basis to infer in the instant case that the petitioner did not receive the individualized consideration for RRC placement required by the Second Chance Act.  That petitioner disagrees with the recommendation for a 60-day placement is not a basis to issue a writ of habeas corpus.

<u>Id.</u> at *12.  The <u>Wires</u> court cited <u>Torres v. Martinez</u>, a case also in the Middle District of Pennsylvania, which was dismissed for failure to exhaust administrative remedies.  However, the <u>Torres</u> court also examined the merits of the case, finding:

> Torres asserts that the April 14, 2008 Bureau of Prison Memorandum imposes a policy of categoric pre-release placement for a time of six months or less because placement for a period greater than six months requires approval by a Bureau of Prisons Regional Director.  The petitioner states that denying prison

16

> staff the discretion to recommend a placement longer than six months without advance written approval by a Regional Director is inconsistent with 18 U.S.C. 3624(c), as interpreted in <u>Strong</u>, 599 F. Supp.2d at 561-62.
>
> In <u>Strong</u>, the court found that the policies elaborated in the April 14, 2008 Memorandum were in violation of regulatory guideposts included in the Second Chance Act's amendments to 18 U.S.C. § 3624(c). It held that the "[m]emorandum impermissibly constrains staff's discretion to designate inmates to a CCC for a duration that will provide the greatest likelihood of successful reintegration into the community, contrary to § 3624(c)(6)(C)."
>
> There is evidence that the April 14, 2008 Memorandum has been replaced with formal federal regulations applicable to the petitioner. Interim regulations passed on October 21, 2008 state that "[i]nmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months." 28 C.F.R. § 570.21(a). Moreover "[i]nmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part." 28 C.F.R. § 570.22 (Oct. 22, 2008).
>
> The court finds that the Bureau of Prisons did not violate the Second Chance Act when it determined that Petitioner Torres would be placed in pre-release custody for six months, regardless of whether it followed the April 18, 2008 Memorandum or the October 2008 Regulations when it reviewed the petitioner's case. In doing so, the court declines to extend the reasoning of <u>Strong</u> to the petition before us. Unlike <u>Strong</u>, the petitioner has provided no reason why he requires more than six months of pre-release placement, other than that it would give him the greatest likelihood of successful reintegration.

<u>Torres v. Martinez</u>, 2009 WL 2487093, at *4-5 (M.D. Pa. Aug. 12, 2009)(internal citations omitted).

17

Likewise, the Eastern District of Kentucky has distinguished Strong in Ramirez v. Hickey, 2010 WL 567997 (E.D. Ky. Feb. 12, 2010), finding that the petitioner's reliance on Strong was misplaced, because Mr. Strong's RRC placement was determined in accordance with the memorandum.  In petitioner Ramirez's case, there was nothing presented to indicate that the RRC placement decision was "based upon arguably discretion-limiting criteria contained in the now defunct April 14, 2008, Memorandum.  Consequently, the reasoning of Strong is inapplicable here ...."  Ramirez, at *4.

In fact, cases brought before various district courts around the country have resulted in the courts examining whether the § 3621(b) factors were considered by the BOP in making the RRC placement decision, after an individualized assessment.  When the § 3621(b) factors are considered, the courts are satisfied that the law was correctly applied and followed.

In the Eastern District of Arkansas, the District Court examined BOP Program Statement 7310.04.  See Lewis v. Outlaw, 2010 WL 1198179 (E.D. Ark. Mar. 23, 2010).  That Program Statement states that RRC needs can usually be met by placement of six months or less, stating:

> (1) An inmate may be referred up to 180 days, with placement beyond 180 days highly unusual, and only possible with extraordinary justification. In such circumstances, the Warden shall contact the Regional Director for approval and the Chief USPO in the

18

>     inmate's sentencing district to determine whether the
>     sentencing judge objects to such placement.

Program Statement 7310.04, P. 8.  The Eastern District of Arkansas, citing the Court of Appeals for the Eighth Circuit, noted that the "extraordinary justification" requirement was "a legitimate standard, consistent with 18 U.S.C. § 3621(b), that the BOP may use when considering a request for extended RRC placement."  Lewis, at *3 (citing Miller v. Whitehead, 527 F.3d 752 at 758-59 (8th Cir. 2008)).  The Eastern District of Arkansas found that the BOP policy "is a valid exercise of the BOP's broad discretion under 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c)."  Lewis, at *3.

   In the case before this Court, it is clear that Edwards was considered for RRC placement in accordance with the factors enumerated in § 3621(b), and on an individualized basis.  This is evidenced by the administrative record provided and the Olsen Declaration.  Edwards has not provided anything, other than a self-serving claim by his girlfriend that she would not provide him a residence upon his release, as well as a generalized statement, unaccompanied by medical documentation, alleging that he has a medical condition requiring surgery, that would suggest that the BOP did not conduct a proper determination as required by law.  Accordingly, this Court finds that the BOP's consideration of all of the criteria under § 3621(b) was thorough

and individualized, and consistent with the Second Chance Act requirements.

Moreover, for reasons stated above, the <u>Strong</u> decision does not apply to Edwards' case, as his RRC placement decision was (1) decided after the BOP imposed appropriate regulations; and (2) was decided in accordance with the factors set forth in § 3621(b).

Thus, based on the foregoing, this Court finds that the BOP complied with the Second Chance Act and Edwards has not demonstrated that he "is in custody in violation of the Constitution or laws or treaties of the United States ..." as require for relief under 28 U.S.C. § 2241.

## **CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, is hereby denied. An appropriate Order accompanies this Opinion.

          <u>s/ Jerome B. Simandle</u>
            JEROME B. SIMANDLE
          United States District Judge

Dated:     **December 23, 2010**